GEORGIA,
Chatham Co.
FEB. 1810.
~~~~
Fitzgerald
vs.
Garvin et al.

*Minutes of Superior Court, letter G. p. 257.*

*Chambers, February* 20, 1810.

CATHERINE FITZGERALD *vs.* DAVID GARVIN et al.

#### NEW TRIAL.

By *Charlton*, Judge.

THE following grounds are relied on by the defendants' counsel, in support of the rule which has been granted, to show cause why a new trial should not be granted :

1. Several persons interested in these four acres were not made parties at the time of the bringing this suit.

2. Writ, or process, is not sealed.

3. The execution of this writ appears, by the sheriff's return, to have been 17 days before the same was issued or is dated.

4. No proclamation was made at the church door, of demandant's claim of dower.

5. On making new parties plaintiff, the defendants were entitled to a term.

6. The declaration is too vague, and not sufficiently descriptive ; the sheriff cannot, from that, apportion or set-off her dower.

7. His honour the judge, erred in deciding, that the plaintiff was not bound in proving seisin title and possession to the premises in *Henry Osborn*, and for suffering the plaintiff to take a verdict without such evidence.

8. The representatives of *Peter Madden* and *John H. Harris* ought to have been made parties defendant to this suit, as said *Harris* and *Madden*, named defendants in this suit, died during its pendency.

When the trial of this cause came on last March Term in the county of *Camden*, it was insisted by the counsel for the

36

GEORGIA,
Chatham Co.
FEB. 1810.

Fitzgerald
vs.
Garvin et al.

defendants, that it was necessary to prove a *seisin* in fact or in law, the marriage, and death of the husband. I looked into the record, and found the defendants had confined themselves to the plea *ne unquies accouple*, and I therefore expressed an opinion, that the defendants, by adopting that plea in bar, had obviated the necessity of proof of *seisin* in the husband, and that the lawfulness or unlawfulness of the marriage, was the only fact which could be investigated, as the record and pleadings were then framed. The defendants might then have pleaded *ne unquies seise que dowar*, that the husband was alive, and other pleas in bar; all of which might have been associated in the answer to the writ, for such is the loose, or, as it is generally denominated, the liberal practice established by our judicial system. You may plead what you please, and in any shape or form you may think proper; but having done so, you must confine yourself to the matter contained in the written defence, which you have deliberately filed as a record of the court.

Such is the language dictated by reason and common sense. If this was not the law, how would the plaintiff protect himself against the surprise, the fraud, the circumvention, of which a different course would be productive? when the defendant had pleaded *ne unquies accouple*, that there had been no lawful marriage between *Catharine* and *Henry Osborne* (the husband, of whose estates the present demandant sues to be endowed,) it was an admission of *seisin* and death of that husband, two of the things requisite to the consummation of dower, and it was so decided by the court. As evidence of the lawfulness of the marriage, a certificate was exhibited signed by *George Walton*, formerly a judge of the Superior Courts of this state, and stating, that *Catherine* and *Henry Osborne* were married by him, in his official capacity. In *England*, if the tenant pleads *ne unquies accouple in loyal matrimonie*, it is tried by the certificate of the bishop, not by a jury. In this free country there is no connexion between the church and the republic; we have, therefore, no bishop to apply to, nor does a certificate in the matter of marriage,

stand upon the same footing as a trial by jury : not consider-
ing the certificate of judge *Walton* as conclusive, I directed
the fact to be tried by the jury, and I told them, as we have
no marriage act, or register of marriages, it might be proved
in any manner which would satisfy them ; that an uninter-
rupted cohabitation and reputation would be sufficient ;
and that in lord *Mansfield's* expressions, in Birt *vs.* Bris-
tow, 1 Doug. 174, " marriage in this country may be prov-
ed in a thousand ways." Evidence was offered of cohabi-
tation and reputation, and the jury under this direction,
gave a verdict for the demandant. It is now alleged, that
I erred in my opinion of the effect of the plea of *ne unquies*
*accouple*, and in my direction to the jury. I have with much
attention revolved in my mind the doctrine advanced at the
trial, and those which since have been advanced by counsel ;
but I still adhere to my former opinion, and for the reasons
that have been stated. Having decided upon this point, which
is contained in the 7th ground of the notice of the new trial,
it is not necessary to advert to the others, but I will do so
for the satisfaction of the bar.

First ground. The judge was not to know that there
were other persons who ought to have been made parties to
the record ; at all events, this objection should have been
made on motion, to quash or set aside the writ, according
to the practice of our courts, or it should have been plead-
ed in abatement ; but it cannot be considered as a ground
for a new trial, particularly as persons not parties to the
record cannot be injured by the verdict.

Second ground. This objection should have been made
before issue joined ; for the defect is cured by filing of the
plea, which is, by our practice, always considered as a
waiver of defects, which can only have a formal operation,
and such an operation to all the essential purposes of justice,
has a seal to the process.

Third ground. This objection stands upon the same foot-
ing as the previous one, as it bears upon a motion for a new
trial ; it falls under the head of amendment, and on motion

GEORGIA,
Chatham Co.
FEB. 1810.

Fitzgerald
vs
Garvin et al.

GEORGIA,
Chatham Co.
FEB. 1810.

Fitzgerald
vs.
Garvin et al.

previous to the plea, the court would have directed the she-riff to amend his return. All original writs can be amended when there is something to amend by, Barnes, 10. In this case the return of the sheriff could have been amended by the date of the issuing of the writ. An amendment is also allowed to prevent an absurdity ; this is laid down in Beaumont *vs.* Cosin, and is thus reported in Barnes, p. 17. Rule to show cause on plaintiff's application, why declaration should not be amended by inserting in the memorandum, viz. 28th *November*, instead of 23d *October*, which was before the cause of action. Rule absolute on payment of costs. Defendant to have term to plead *de novo*, pleading in bar.

Fourth ground. As no new parties could have been added at the trial, this ground requires no farther answer.

Fifth ground. The *lex fori*, the form of the remedy to be pursued is prescribed by our own law. The proclamation at the church door after summons is directed by 31 Eliz. and if that proceeding is to be observed, we must take and adopt the whole of the English proceedings as relates to dower, viz. the *præcipe, original writ, summons, assoign, grand cape, counting, &c.;* all this is repugnant to our own statutory regulations. *We* must proceed in all cases at common law by petition, process, and plea, or answer.

Sixth ground. The declaration or petition conforms to the plan or chart of the town of *St. Marys*, in which the lots are situated ; it is, therefore, sufficiently definite and descriptive, and may be assigned by metes and bounds.

(*a*) Eighth ground. It is laid down in the English books, that the alien widow of a subject, shall not be endowed, and in support of this doctrine the venerable authority of Bracton is cited, Bracton, 298, and Barton's Elements, 225. The

---

(*a*) The alienage of the demandant's husband, was suggested at the argument, and does not appear to have been incorporated in the original notice. The attention of the court was drawn to it, by its being fully argued on both sides ; and it is here made the 8th ground instead of that which was contained in the notice, but which was not much pressed.

present case differs from these cited, because the right to dower in the wife had vested previous to her intermarriage with *Fitzgerald.* Did this intermarriage vest the life estate of the wife in the husband ? Could he dispose of it ? Was it liable to his debts ? By our law inheritances of the wife, freeholds and chattels become the property of the husband, unless previously secured by a settlement. We get into a dilemma, by giving the dower estate of the wife to the husband, for as a freehold, his alienage prevents him from holding it, and if he cannot, the wife losing her right, does it escheat ? The policy of our law is to prevent aliens holding a title to real estate, and the present inclination of my mind is, that an alien by intermarriage with a female citizen in that way cannot, *per obliquum,* obtain a privilege which could not be obtained *per directum.* If the inheritance or freehold of the wife is not secured by previous arrangements, I am disposed to think her intermarriage with an alien produces a forfeiture to the public. This, therefore, is the most formidable ground that has been urged, but as the defendants have precluded themselves, by their pleading, from giving it in evidence, I cannot make it the basis of a new trial—they must adopt another remedy.

*Rule discharged.*

GEORGIA,
Chatham Co.
FEB. 1810.

Fitzgerald
vs.
Garvin et al.

> *Cuyler, Davis,* and *Berrien,* for Demandant.
> *Stites* and *Lawson,* for Defendants.